## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KARL S. CHAMBERS,       :
     Petitioner,       :       3:06-CV-980
                    :
   v.       :
                    :       (JUDGE NEALON)
BEARD et. al.,       :       (MAGISTRATE JUDGE MANNION)
     Respondents       :

### MEMORANDUM and ORDER

On May 15, 2006, Petitioner Karl Chambers filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The matter was referred to

Magistrate Judge Malachy E. Mannion and counsel was appointed. Thereafter, on

July 24, 2006, an amended habeas petition was filed. (Doc. 10). On December 29,

2006, Respondents filed a response to the amended petition, (Doc. 22), to which

Petitioner submitted a traverse on January 11, 2007, (Doc. 23). On January 21, 2009,

after considerable litigation of a discovery motion filed by Petitioner and receipt of

the state court records, the Magistrate Judge issued a Report and Recommendation

that the amended habeas petition be denied. (Doc. 54). Petitioner filed objections on

February 4, 2009. (Doc. 55). The objections have been fully briefed and, for the

reasons set forth below, the report will be adopted and the habeas petition will be

denied.

**FILED**
**SCRANTON**

JUL 2 2 2009

1

PER _____
**DEPUTY CLERK**

**Background**

> ### (A) Factual Background

A summary of the facts, taken from this Court's Order of March 5, 2008,

denying Petitioner's discovery request, is as follows:

> The evidence at trial established that [on February 1, 1986,] Petitioner [and a group of friends were] in the Fish Store when the victim arrived at, or near, 3:30 p.m. The victim made a purchase and reached under her shirt for her wallet, paid the cashier, put the change in her wallet, and replaced her wallet under her shirt. The victim left the store and moments later Petitioner left. When Petitioner's friends subsequently left the store, the axe handle [Petitioner always carried with him], which [he] had left outside upon entering the store, was gone.
>
> At approximately 4:15 - 4:30 p.m., Petitioner and the victim were seen on the Silver Bridge and appeared to be arguing. Petitioner had a large stick in one of his hands. Between 4:45 p.m. and 5:00 p.m., the victim's body was seen under the Black Bridge, which is in close proximity to the Silver Bridge.
>
> After some delay in reporting the observation of the body, the police arrived at 8:35 p.m. and found that the victim had been beaten to death by a blunt instrument that caused a subdural hemorrhage. While the police were investigating, Petitioner arrived at the Shady Dell bar with the axe handle, which he left outside at the request of the manager of the bar. When Petitioner left, he did not reclaim his axe handle. He then visited his friend's house and possessed alcohol, marijuana, and money. [His friends testified that Petitioner did not tell them how he paid for these items when a few hours earlier he did not have any money to contribute to the fund they collected for food at the Fish Store.]
>
> A week or two after the murder, Petitioner told a friend, Roy Phillips, within the hearing of Phillips' girlfriend, April Wright, that he had "killed that old lady." Subsequently, while in the York County Prison on unrelated charges, Petitioner confided in two fellow prisoners, Jeffrey Hutchenson and Richard Taylor, that he had killed the victim when she refused to give him money by hitting her and taking the money.

(Doc. 40, pp. 62-63); see also Commonwealth v. Chambers, 528 Pa. 558, 599 A.2d

630, 633-35 (1991), cert. denied, 504 U.S. 946, 112 S. Ct. 2290, 119 L. Ed. 2d 214

(1992). "Jeffrey Hutchenson and Richard Taylor told police that when they asked

Petitioner what he hit the victim with, Petitioner stated that it was his axe handle,

which he always carried around as a walking stick." (Doc. 54, p. 4) (citing (Doc.

10, Exs. 12, 13)); Commonwealth v. Chambers, 570 Pa. 3, 807 A.2d 872, 885

(2002)).

> The medical evidence presented at trial included the testimony of
> Doctor Robert Silverman, the pathologist who performed the autopsy on
> the victim. Dr. Silverman testified that the injuries sustained by the
> victim were consistent with blunt trauma inflicted by a weapon such as
> an axe handle. Id. More importantly, he testified that certain of the
> wounds found on the victim matched the pattern of curves seen on
> Petitioner's axe handle and that other wounds were compatible with a
> screw on a clamp attached to the weapon. Id.
> Janice Roadcap, a chemist with the Pennsylvania State Police
> Laboratory, testified that all the blood found at the crime scene was
> human blood consistent with type O.[1] (Doc. 1, Ex. 1, p. 23); (Doc. 22, p.
> 10). The victim's blood type was O positive. Chambers, 599 A.2d at
> 639-40. A smudge of blood on a stick found at the scene was the only
> evidence that could not be tested because there was an insufficient
> quantity of blood to identify as human or animal or to type. (Doc. 1, Ex.
> 1, p. 23).

(Doc. 40, pp. 4-6).

---

[1]According to Petitioner's motion pursuant to the Post-Conviction Relief
Act ("PCRA") filed in state court, blood was identified on a stone, in two samples
of snow, on pantyhose, a sock, and on a stick found at the crime scene. This stick
was not the axe handle belonging to Petitioner that has been previously mentioned.

3

### (B) *Procedural History*

On June 26, 1987, in the York County Court of Commons Pleas, Petitioner was convicted of Murder in the first degree and Robbery. He was subsequently sentenced to death. On direct appeal, the Pennsylvania Supreme Court considered sixteen issues of alleged error, including the sufficiency of evidence and a motion for a new trial based on the after-discovered evidence of Michael Boyard's statements, which is discussed in claim III below. Chambers, 599 A.2d 630. The Court affirmed the convictions, but concluded that the prosecutor made an improper statement during the sentencing hearing and remanded for a new penalty phase. Id.

At the conclusion of the second penalty phase, the jury again sentenced Petitioner to death. This sentence was affirmed on appeal. Commonwealth v. Chambers, 546 Pa. 370, 685 A.2d 96 (1996), cert. denied, 522 U.S. 827 (1997).

On November 10, 1997, Petitioner timely filed a PCRA petition and, on April 21, 1998, submitted an amended petition raising numerous claims of ineffective assistance of trial counsel. Chambers, 807 A.2d at 879. Petitioner asked the Court for access to the physical evidence for forensic testing. Id. at 889. "The PCRA court rejected Chambers' request because [he] failed to show good cause why the discovery should be permitted." Id. On March 8, 2000, the PCRA court denied his petition "concluding that Chambers had not met the burden of proving ... that his

constitutional rights were violated or that trial counsel was ineffective." Id. at 879.

On appeal to the Pennsylvania Supreme Court, Petitioner raised fourteen issues, including claims I, II, IV, and V discussed below. Chambers, 807 A.2d 872. The Court affirmed the PCRA court's decision on Petitioner's claims of alleged errors in the guilt phase of his trial, but concluded that the trial court gave an improper instruction during the penalty phase and remanded again for re-sentencing. Id. at 890.

Before Petitioner's third sentencing hearing, the United States Supreme Court held that the execution of mentally retarded persons is unconstitutional. Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002). On June 23, 2005, the York County Court of Common Pleas found that Petitioner was mentally retarded and sentenced him to life imprisonment.

On May 15, 2006, Petitioner initiated the instant action by filing a habeas petition pursuant to 28 U.S.C. § 2254. (Doc. 1). After counsel was appointed, he filed an amended petition raising five claims: (1) counsel was ineffective, at trial and at the 1994 re-sentencing, for not obtaining scientific analysis of the forensic evidence and, further, that the PCRA court violated Petitioner's due process rights to a fair hearing by denying him access to the same; (2) the Commonwealth withheld the exculpatory statement of Wendell Murray in violation of Brady v.

Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); (3) counsel was ineffective for not investigating witness statements about Michael Boyard's[2] involvement in the crime; (4) the prosecutor improperly vouched for a witness at trial; and (5) all the errors, taken cumulatively, prejudiced him. (Doc. 10).

On September 25, 2006, Petitioner filed a motion for discovery and access to physical evidence for testing. (Doc. 12). Although the request was initially granted by the Magistrate Judge, (Doc. 30), this Court concluded that Petitioner had not established "good cause" and therefore denied his motion for discovery, (Doc. 40). See 28 U.S.C. § 2254 Rule 6(a) ("A judge may, for good cause, authorize a party to conduct discovery."). Petitioner's motion for reconsideration was denied on June 6, 2008. (Doc. 46).

While the discovery motion was pending, Respondents filed a response to the amended habeas petition, (Doc. 22), and Petitioner submitted a traverse, (Doc. 23). On January 21, 2009, Magistrate Judge Mannion issued a Report and Recommendation concluding that Petitioner is not entitled to habeas relief and recommending that his petition be denied. (Doc. 54). Petitioner filed objections and a brief in support on February 4, 2009. (Docs. 55, 56). On February 17, 2009,

---

[2]As the Report clarified, the parties' submissions spell Boyard two ways: "Boyard" and "Boylard." (Doc. 54, p. 34 n.14). This Memorandum will be consistent with the Report and Recommendation and refer to "Michael Boyard."

Respondents submitted a brief in opposition, (Doc. 57), and a reply, (Doc. 59), was filed on February 25, 2009.

## Standard of Review

When objections to a Report and Recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* review of those portions of the report to which objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). A *de novo* determination is not required if the objections are not specific. Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process."); Mutombo v. Carl, 2003 U.S. Dist. LEXIS 27124 (M.D. Pa. 2003) (Kane, J.) (overruling objections that merely restated the arguments petitioner previously presented to the magistrate court and concluding that the magistrate judge properly considered the claims). The Court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); Local Rule 72.3. Further, the Court may, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. Goney, 749 F.2d at 7.

**Discussion**

The Report correctly identified the standard of review for a petition for writ of habeas corpus on behalf of a person in state custody. See (Doc. 54, pp. 7-9) (citing 28 U.S.C. § 2254(d)). Specifically,

> [habeas relief] shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law... ; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts...

28 U.S.C. § 2254(d). "The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (defining the terms "contrary to" and "unreasonable application of"). Further, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*(A)* *Claim I- Forensic testing*

Petitioner's first ground for relief is the alleged ineffective assistance of trial counsel for not securing scientific analysis of the physical evidence and PCRA court

error in denying his discovery request for the same. (Doc. 10, pp. 18-24); (Doc. 54, pp. 10-11). The Magistrate Judge determined that Petitioner argued, "in a wholly conclusory fashion," that the blood was neither his nor the victim's and that counsel's failure to obtain exonerating test results was in violation of his constitutional rights. (Doc. 54, p. 10). The Report stated that Petitioner "termed the PCRA Court's refusal to grant access to the sought after evidence 'inexplicable.'" Id. at 10-11. Petitioner also alleged that the Pennsylvania Supreme Court's decision to affirm the PCRA court failed to consider whether he had a federal constitutional right to the evidence. (Doc. 10, pp. 23-24).

### (1) Ineffective assistance of counsel

The Magistrate Judge accurately defined the legal standard for evaluating an ineffective assistance of counsel claim.[3] (Doc. 54, p. 11). To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is a strong presumption that counsel is effective and the courts,

---

[3]The Report also discussed the standard for a motion to dismiss; however, no such motion was filed in the instant action. Rather, Respondents asserted that Petitioner did not establish the violation of any constitutional right entitling him to habeas relief. Therefore, because this portion of the Report is not necessary to the instant determination, it will not be addressed. See (Doc. 54, pp. 12-15).

guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003). The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first prong of the Strickland test. Id. at 86. It is not necessary for the court to "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." Id. at 85. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Chambers, 807 A.2d at 883 (quoting Strickland, 466 U.S. at 695-96)). The court must consider the totality of the evidence and the burden is on the petitioner. Strickland, 466 U.S. at 687, 695.

The Report determined that Petitioner's only factual allegation in support of his ineffectiveness claim is that counsel made no attempt, at trial or during the 1994 re-sentencing, to obtain scientific analysis of the blood[4] and hair evidence. (Doc. 10, pp. 19-20); (Doc. 54, pp. 10-11, 15). The Magistrate Judge opined that an

---

[4]As previously mentioned, the blood identified on a stick at the crime scene was insufficient to permit an analysis, leaving only the samples of blood found on a stone, in the snow, on a sock, and on pantyhose available for additional testing. See (Doc. 40, pp. 4-6).

evidentiary hearing is not justified because this fact is not in dispute and, further, would not be a sufficient reason to grant habeas relief. Id. at 15-16, citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 300-01 (3d Cir. 1991) (holding, "a district court must hold a hearing if a petitioner has alleged facts that, if proved, would entitle him or her to relief and an evidentiary hearing is necessary to establish the truth of those allegations").

     *a.    Ineffectiveness at trial*

The Report concluded that there are three reasons why Petitioner is not entitled to habeas relief. (Doc. 54, p. 16). First, Petitioner did not establish that his attorney's failure to secure testing was "prejudicial." Id.; Strickland, 466 U.S. 668. The Magistrate Judge, citing to this Court's March 5, 2008 Order regarding the discovery motion, determined that Petitioner's "confessions fully support the jury's verdict." (Docs. 35 and 54, p. 16). Further, the Report explained that the absence of forensic evidence connecting Petitioner to the crime scene is not proof that he was not present during the murder. Id. at 16-17 (citing Logmans v. Moore, 2005 U.S. Dist. LEXIS 45016 (D.N.J. 2005) (affirming the state court's decision that counsel had a reasonable, strategic basis not to request discovery and agreeing with the state court that even if DNA showed that blood at the crime scene did not belong to the petitioner, that fact alone would not prove his innocence)).

Petitioner objects to the Report's conclusion that he did not demonstrate prejudice. (Doc. 55, ¶¶ 20-27). He challenges the credibility and consistency of the witnesses who heard his confessions and argues that they "are not so overwhelming as to overcome the prejudice from counsel's failure to obtain testing that would have reasonably likely produced evidence that someone [else] committed the murder." Id. Additionally, he contends that the Magistrate Judge "misconstrued the impact of the expected testing results." (Doc. 56, pp. 3-4). Petitioner asserts that scientific testing would not only ascertain the absence of evidence connecting him to the crime, but the presence of evidence implicating someone else. Id.

Petitioner's objections ignore the fact that counsel was able to cross-examine each of the Commonwealth's witnesses at trial and develop the discrepancies on which he now relies. See (Doc. 55, ¶¶ 20-27) (citing notes of testimony). Further, Petitioner's assertion that forensic testing was reasonably likely to identify someone else is unfounded. All the hairs collected from the crime scene or the victim's body were subject to comparison testing at the time of trial and were consistent with the victim's hair, except for one determined to be dog hair. (Doc. 1, Ex. 1, ¶¶ 47-52). Similarly, all the blood evidence, except for a smudge of blood on a stick recovered at the crime scene which was too small to test, was human blood consistent with the victim's blood type. Id. at p. 23. An independent review confirms that there is

nothing to indicate that testing of this evidence would produce the results Petitioner

desires. See Zettlemoyer, 923 F.2d at 301 ("bald assertions and conclusory

allegations do not provide sufficient ground to warrant requiring the state to respond

to discovery or to require an evidentiary hearing"). Moreover, merely detecting

DNA from another individual, in the absence of any evidence as to how and when

that DNA was deposited, would not exculpate Petitioner by pointing to a different

assailant. Commonwealth v. Smith, 2005 Pa. Super. 405, 889 A.2d 582, 583-84

(Pa. Super. 2005), appeal denied 588 Pa. 769, 905 A.2d 500 (2006).

Petitioner raised both the credibility of witnesses and the circumstantial

nature of the evidence on direct appeal. The Pennsylvania Supreme Court held that

"sufficient evidence exists in the record to support the conviction of murder of the

first degree and robbery" and determined that Petitioner's "credibility arguments

have no merit." Chambers, 599 A.2d at 635, 642 n.7. "[T]he test for sufficiency of

evidence is the same under both Pennsylvania and federal law." Johnson v.

Mechling, 541 F. Supp. 2d 651, 665 (M.D. Pa. 2008) (Jones, J.) (citing Evans v.

Court of Common Pleas, 959 F.2d 1227, 1232 (3d Cir. 1992)). The Pennsylvania

standard regarding the credibility of witnesses is similarly indistinguishable from

the federal standard. Id. (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.

2781, 61 L. Ed. 2d 560 (1979)). After an independent review, it is determined that

the state court's decision was not "contrary to, or involved an unreasonable application of, clearly established federal law", nor was it "based on an unreasonable determination of the facts." The Magistrate Judge's conclusion that prejudice was not established will be adopted.

Second, the Report determined that Petitioner did not establish that counsel's representation fell below an objective standard of reasonableness. (Doc. 54, p. 17) (citing Strickland, 466 U.S. 668). The Magistrate Judge, recognizing that the admissibility of DNA testing at the time of trial is relevant to an inquiry into the reasonableness of counsel's actions, referred to the March 5, 2008 Order which explained, "[i]n Pennsylvania, DNA testing was not fully endorsed by the courts until 1992, five years after Petitioner's conviction." Id.; (Doc. 35, p. 32) (citing English v. Vaughn, 2005 U.S. Dist. LEXIS 14303 (E.D. Pa. 2005); Commonwealth v. Brison, 421 Pa. Super. 442, 618 A.2d 420 (Pa. Super. 1992)). Further, there is no legal support to impose a duty on counsel to make new law. (Doc. 54, p. 17).

In his objections, Petitioner argues that the Report did not acknowledge that there was scientific testing, other than DNA, which trial counsel should have secured. (Doc. 56, pp. 4-5). An independent review of the record, however, confirms that Petitioner did not establish that counsel acted unreasonably. Notably, the blood evidence was typed and a match to the victim's blood type; the hairs

14

found at the crime scene were consistent with the victim; and although it was inferred that Petitioner's axe handle was the murder weapon, there was no proof. Counsel's trial strategy was to argue to the jury that the lack of physical evidence demanded an acquittal. As the Magistrate Judge concluded, the absence of physical evidence in the Commonwealth's examinations supported counsel's approach. See (Doc. 54, p. 19). Trial counsel cannot be ineffective for failing to request additional testing of hair and blood evidence that essentially excluded Petitioner as the donor, or of the axe handle that the Commonwealth could not prove was the murder weapon. See Smith, 889 A.2d at 584-93 (rejecting defendant's argument that the absence of his DNA and/or the presence of DNA from a third party on the victim's fingernail scrapings would establish his innocence because there was no evidentiary basis on which to infer that any DNA detected on the victim's fingernails was deposited there by her assailant during the murder).

Petitioner further objects to the Magistrate Judge's finding of reasonableness by asserting that despite the lack of authority to admit DNA evidence, "[a]ll counsel had to do was ask." Id. However, the Supreme Court has rejected this "nothing to lose" standard for ineffective assistance of counsel claims. Knowles v. Mirzayance, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) (stating that "habeas relief cannot be granted pursuant to § 2254(d)(1) based on such a standard"). The "proper

measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 1420 (citing Strickland, 466 U.S. at 688).

Petitioner's reliance on Pennsylvania's relaxed waiver rule is similarly misplaced. (Doc. 55, pp. 5-6). Under this rule, "the Pennsylvania Supreme Court reviewed the merits of all claims raised in capital cases, whether on direct appeal or in post-conviction proceedings, regardless of any waiver by the defendant." Saranchak v. Beard, 538 F. Supp. 2d 847, 858 (M.D. Pa. 2008) (Rambo, J.). Petitioner, for the first time in this habeas matter, contends that counsel could have presented the DNA issue during direct appeal. See (Doc. 10, p. 20) (alleging only counsel's ineffectiveness for "failing to obtain the appropriate testing during 1986 or 1994"). Regardless, while the relaxed waiver rule would have allowed Petitioner to raise the merits of appellate counsel's ineffectiveness in state court, the rule is irrelevant to a determination of whether trial counsel was in fact ineffective.

Applying prevailing professional norms, the Report then addressed Petitioner's argument that trial counsel had a duty to conduct a prompt investigation. The Magistrate Judge explained, "[i]t is, on some occasions, a rational, strategic, and professional choice for an attorney *not* to pursue a line of inquiry" and distinguished the Baynes opinion upon which Petitioner relied. (Doc. 54, p. 18) (emphasis in original), citing United States v. Baynes, 622 F.2d 66, 69 (3d

16

Cir. 1980) (finding counsel to be ineffective for not obtaining a voice exemplar from a tape implicating the defendant). The Report stated that the tests in <u>Baynes</u> could have been performed on a copy of the tape without risk that any adverse test results could be used at trial; but here, testing would have had to be conducted on the original evidence. <u>Id.</u> The Report determined that Pennsylvania law did not require the prosecution to hand over its evidence for independent testing; rather, "the state court may have ordered the state either: to conduct the tests and send the results to petitioner's trial counsel or, alternatively, to conduct the tests in the presence of petitioner's representatives." <u>Id.</u> at 19. The Magistrate Judge opined that had counsel conducted forensic tests, the outcome of which were potentially damaging, the results would have been available to the prosecution. <u>Id.</u> The Report concluded, "the absence of scientific testing left trial counsel free to argue that the prosecution's case was entirely circumstantial" and although "it might be argued that trial counsel's strategy failed, ...a failed strategy does not establish that [it] was unreasonable at the time... ." <u>Id.</u>; <u>see also</u> <u>Marshall</u>, 307 F.3d at 86.

Petitioner objects to the Magistrate Judge's conclusion that the prosecution is not required to turn over physical evidence for testing and cites to <u>Commonwealth v. Kennedy</u>, 583 Pa. 208, 876 A.2d 939, 941 (Pa. 2005). (Doc. 56, p. 7). In <u>Kennedy</u>, the trial court granted the defendant's pre-trial motion directing the

17

Commonwealth to package evidence and send it to an independent lab for DNA comparison. Id. at 941. Subsequently, the prosecution subpoenaed a witness from the lab to testify at trial and the defendant filed a motion to quash. Id. at 941-42. Examining pre-trial discovery rules, the Pennsylvania Supreme Court held that a trial court has the discretion to order production of the results of scientific testing compiled by a third-party for the defense when, *inter alia*, the defendant intends on using this evidence at trial. Id. at 946 (citing PA.R.CRIM.P. 573). However, the Kennedy court concluded that the state procedural rules only applied to pre-trial discovery and did not address whether the work-product doctrine barred the Commonwealth from calling an agent hired by the defense to testify at trial. Id. at 947. Applying the work-product doctrine, the Court determined that in criminal proceedings the state was precluded from calling as a witness an agent hired by the defense if the defendant decided not to call the agent or use the materials prepared by the agent as evidence. Id. at 949 (providing a limited exception). The Court then overruled Commonwealth v. Porter, 524 Pa. 162, 569 A.2d 942 (Pa. 1990), which held "that the Commonwealth was entitled to call the defendant's expert to support the Commonwealth's identification witness, despite the fact that the defendant decided not to call the witness on his behalf". Kennedy, 876 A.2d at 949 n.9

Notably, the Kennedy opinion was decided in 2005, but the conduct of which

18

Petitioner complains occurred at or before his 1987 trial and again at his re-sentencing in 1994. The case is also distinguishable from the instant matter because the Pennsylvania Supreme Court did not consider the lawfulness of the trial court's order directing that the evidence be sent to an independent lab for DNA testing; rather, Kennedy decided whether the Commonwealth could subpoena a witness from the lab to testify as to the results.

Independent research cooberates the Magistrate Judge's conclusion that there is "no statute or common law rule which would have required the prosecution to turn over such physical evidence." (Doc. 54, p. 19). The Pennsylvania Rules of Criminal Procedure providing for Mandatory Disclosure by the Commonwealth, as opposed to the rules dictating what the defendant must disclose which were discussed in Kennedy, state that "[t]he Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy ... any tangible objects...." PA.R.CRIM.P. 305 (1987) (now at PA.R.CRIM.P. 573(B)(1)(f) (2009)). The Report correctly determined that this statute does not require the prosecution to hand over its evidence, but only allows a defendant to "inspect and copy." See also Miller v. Goodyear Tire & Rubber Co., 40 Pa. D. & C. 3d 430, 431 (Pa. C.P. 1985) (holding that Pennsylvania Rule of Civil Procedure 4009, which states that "[a]ny party may serve on any other party a request (1) . . . to inspect and copy, test or sample any

tangible things...", does not provide the court with the power to compel the surrender of physical evidence for the purpose of allowing the opposing party to inspect and test it). Therefore, the Magistrate Judge's conclusion that Petitioner failed to establish how counsel's performance was unreasonable will be adopted.

Third, the Report explained that while discovery might reveal facts tending to prove Petitioner's claim, it is equally possible forensic testing could establish that trial counsel's strategy was reasonable, thereby refuting an ineffectiveness argument. (Doc. 54, pp. 19-20). The Magistrate Judge noted the Pennsylvania Supreme Court's holding that Petitioner did not establish his ineffectiveness claim because he "failed to prove that his trial counsel did not have a reasonable strategic basis for not seeking blood testing." Id.; Chambers, 807 A.2d at 889 (affirming the decision of the PCRA court). The Report stated, the absence of any citation to the record that counsel had no strategy justifying his failure to conduct forensic testing, "strongly suggests that any ineffective assistance of counsel claim is implausible." (Doc. 54, p. 21). The Report referenced the highly deferential standard owed to counsel's decisions and determined Petitioner made no allegations describing counsel's pre-trial investigation and strategy determinations. (Doc. 54, pp. 21-23).

Petitioner objects to these conclusions, arguing that trial counsel testified at the PCRA hearing that his strategy was "twofold, one to attempt to demonstrate

[Petitioner's] innocence, and secondly, to bring out the possibility that others may have committed the crime." (Doc. 56, p. 8) (citing Doc. 47, p. 16). However, this objection misinterprets the findings in the Report and Recommendation. Specifically, while the testimony Petitioner cites relates to counsel's *trial* strategy, the Magistrate Judge decided that the amended habeas petition fails to make any allegations as to counsel's "*pre-trial* strategy." (Doc. 54, p. 22) (emphasis added). The Report determined that in Petitioner's habeas brief "there is not even a proffer" as to why counsel did not request scientific testing before trial. Id. Further, Petitioner's assertion that trial counsel acknowledged the benefit of forensic evidence linking someone else to the murder is irrelevant to counsel's strategy for not pursuing forensic tests. (Doc. 56, p. 8). Obviously trial counsel would have liked to have evidence tending to establish someone else's involvement in the crime; but, as the Magistrate Judge concluded, trial counsel had to weigh that possibility against the chance the evidence would, instead, prove Petitioner's guilt and thereby eliminate any argument he could make that the Commonwealth's case was circumstantial. Accordingly, the recommendation that Petitioner's claim of ineffective assistance of trial counsel be dismissed will be adopted.

      *b.    Ineffectiveness at re-sentencing*

The Report determined that Petitioner's claim of ineffective assistance of

counsel at his 1994 re-sentencing should be denied for reasons similar to those just discussed. (Doc. 54, pp. 23-24). Additionally, the Magistrate Judge stated that Petitioner "failed to put forth any argument or legal theory indicating how the sought after scientific evidence would have been relevant to mere resentencing proceedings where the underlying conviction had already been established." Id. (citing Marshall v. Cathel, 428 F.3d 452, 468 (3d Cir. 2005)).

Petitioner contends that this conclusion is flawed because: (1) evidence surrounding the circumstances of the offense may provide mitigation, 42 Pa.C.S. § 9711(e)(8); and (2) had counsel obtained the testing and the results were in his favor, he could have renewed a motion for a new trial, 42 Pa.C.S. § 9543. (Doc. 56, p. 8). The state statute Petitioner cites to support his first argument was discussed by the Pennsylvania Supreme Court in Harris. In Harris, the defendant alleged that counsel was ineffective for failing to present evidence, during the penalty phase of his trial, of self-defense and of two prior hung juries. Commonwealth v. Harris, 550 Pa. 92, 109-10, 703 A.2d 441, 449-50 (1997), cert. denied, 525 U.S. 1015, 119 S. Ct. 538, 142 L. Ed. 2d 447 (1998). The Court rejected the defendant's claims of self-defense and, recognizing that while he "may introduce 'any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense,' 42 Pa.C.S. § 9711(e)(8)", held that evidence of a

hung jury is not evidence of mitigation. Id. at 110 n.18. Similarly, the Fletcher court concluded that the trial court properly limited the defendant "from presenting during the penalty phase ... statements that he was not guilty of the murder for which he had just been convicted." Commonwealth v. Fletcher, 561 Pa. 266, 295-296 (Pa. 2000), writ. denied, 531 U.S. 1035 (2000), citing Franklin v. Lynaugh, 487 U.S. 164, 173-74, 101 L. Ed. 2d 155, 108 S. Ct. 2320 (1988) ("there is no constitutional requirement that a convicted murderer be permitted to argue residual doubt concerning guilt as a mitigating factor"). Petitioner's first argument also fails under federal law. See Oregon v. Guzek, 546 U.S. 517, 523, 126 S. Ct. 1226, 163 L. Ed. 2d 1112 (2006) (holding that there is "nothing in the Eighth or Fourteenth Amendments that provides a capital defendant a right to introduce new evidence [regarding his guilt or innocence] at sentencing"); Marshall, 307 F.3d at 103 ("The penalty phase focuses not on absolving the defendant from guilt, but rather on the production of evidence to make a case for life.").

Petitioner's second argument does not address the Magistrate Judge's conclusion that he failed to allege how scientific testing would be relevant at a re-sentencing. Instead, he cites to the eligibility for relief section of the PCRA, 42 Pa.C.S. § 9543, and contends that if counsel had requested the tests and if the results are in his favor, then he could have filed a motion for a new trial. (Doc. 56, p. 9).

Because the objection is not specific, he is not entitled to *de novo* review. Nevertheless, after an independent examination, the objection will be overruled.

Habeas relief may only be granted if Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). As just explained, re-sentencing counsel was not ineffective for failing to secure testing that was inadmissible during the penalty phase; thus, no constitutional violation occurred. The Magistrate Judge's recommendation to deny the claim of ineffective assistance of counsel at the 1994 re-sentencing hearing will be adopted.

*(2)    PCRA Proceedings*

The Report examined Petitioner's claim that the PCRA court's decision to deny him access to the physical evidence for forensic testing violated his federal due process rights to a full and fair hearing. (Doc. 54, pp. 24-26). The Magistrate Judge determined that Petitioner did not cite any authority to support his position and his suggestion that once the state allows for collateral review it must provide unlimited discovery if it could help develop a factual basis for an innocence claim is

24

unfounded. Id. Magistrate Judge Mannion reasoned that if Petitioner's position were the law, "every defense attorney would simply wait and see if the government could prove its case, rely on the beyond-a-reasonable doubt burden of proof in criminal actions, and if that 'strategy' failed, the defense could actively pursue evidence in PCRA proceedings, which would effectively become a second trial." Id. The Magistrate Judge decided that Petitioner's allegation, that trial counsel did not have a reasonable strategy for not obtaining the tests, is "wholly conclusory" and that he failed to develop this assertion in the PCRA hearing. Id. The Report recommended Petitioner's due process claim be denied. Id.

Petitioner's objections to this portion of the Report merely restate the arguments presented to the Magistrate Court. See (Doc. 56, pp. 9-10); Mutombo, 2003 U.S. Dist. LEXIS 27124; Pearson v. Rozum, 399 F. Supp. 2d 645, 647 (E.D. Pa. 2005) (de novo review is not required where the petitioner merely reasserts the arguments set forth in the habeas petition). His claims that defendants are entitled to post-conviction review, effective assistance of counsel, and due process protections during such proceedings are correct. Regardless, Petitioner's mere disagreement with the PCRA court's decision to deny him access to the physical evidence does not mean that the state court erred or that his constitutional rights were violated. Petitioner requested discovery pursuant to Pennsylvania Rule of

Criminal Procedure 902(e)(2), which provides: "on the first counseled petition in a death penalty case, no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of good cause." PA.R.CRIM.P. 902(e)(2). The PCRA court concluded, however, that he "failed to show good cause why the discovery should be permitted." Chambers, 807 A.2d at 889. On appeal, the Pennsylvania Supreme Court affirmed the "good cause" determination because he "failed to prove that his trial counsel did not have a reasonable strategic basis for not seeking blood testing." Id. (stating that "'good cause' requires more than just a generic demand for potentially exculpatory evidence").

An independent examination confirms that Petitioner did not establish that the state courts' decisions were contrary to federal law or based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The "good cause" requirement in Rule 902(e)(2) is similar to the standard applied by federal courts to a habeas petitioner's discovery request. 28 U.S.C. § 2254 Rule 6(a). In the instant action, this Court previously considered Petitioner's motion for access to the physical evidence for scientific testing and determined that he did not establish "good cause" for such discovery. (Doc. 40). Accordingly, the objection will be overruled.

Petitioner also requests reconsideration of the Order denying his motion for discovery. (Doc. 55, p. 22). However, a properly filed motion for reconsideration

26

has been denied, (Doc. 46), and there are no new grounds justifying review. Moreover, a renewed request to reconsider is not properly brought in objections to the Report and Recommendation and will be denied. The Magistrate Judge's recommendation that Petitioner's due process claim be denied will be adopted.

### (B)  Claim II- Wendell Murray

Petitioner's second claim is that the prosecution improperly withheld exculpatory evidence indicating someone else may have committed the murder, specifically the statements by Wendell Murray to police. (Doc. 54, p. 28). The Magistrate Judge explained that prior to Petitioner's arrest, Murray was an inmate at the York County prison and provided information in hopes of receiving consideration on his pending charges. Id. Murray informed police that a hispanic male known as "Magic" told him, "I didn't mean to knock the old lady down." Id. The Report noted that Murray had withdrawn his statements prior to Petitioner's arrest and the police did not disclose Murray's report to Petitioner. Id. at 28-29. The Magistrate Judge concluded that Magic's purported confession had some resemblance to the facts of the instant murder, but a police investigation revealed Magic's identity and linked the described events to an unrelated robbery. Id.

The Report discussed Petitioner's argument to the PCRA court that this evidence was Brady material and that the prosecution's failure to disclose the

statement warranted relief. (Doc. 54, pp. 29-30); see Brady, 373 U.S. 83. The PCRA court explained, "[f]or a defendant to establish a Brady violation, he or she must show that: (1) the evidence was suppressed by the State, either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material, meaning that prejudice must have ensued." Chambers, 807 A.2d at 887 (citing Strickler v. Greene, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 119 S. Ct. 1936 (1999)). The Magistrate Judge determined that the state courts assumed Murray's statement was Brady material and, after taking Murray's testimony, the PCRA court held it was an "irrelevant and fruitless lead" and if Murray were called as a witness he "would have appeared incredible." (Doc. 54, p. 30); Chambers, 807 A.2d at 888. The Pennsylvania Supreme Court affirmed the PCRA court's decision. Id. Magistrate Judge Mannion, using their assumption, decided that the state courts correctly applied Supreme Court law to Petitioner's case. (Doc. 54, p. 30); 28 U.S.C. § 2254(d).

Moreover, the Magistrate Judge concluded that the police report concerning Murray's statement was not Brady material. (Doc. 54, p. 30). Magistrate Judge Mannion explained: "[u]nder Brady, defendants are not entitled to unlimited or to general discovery from the prosecution; rather, the government's obligation to turn over material in its possession extends only to exculpatory information...." (Doc.

54, p. 30). The Report pointed out a disparity in the described events: the incident "Magic" described to Murray occurred Friday night into Saturday morning, but the instant murder happened after 3:30 p.m. on Saturday afternoon. Id. The Report, noting several reasons to discredit Murray's PCRA testimony, including his drug problem, his inability to indicate when he spoke with "Magic", and the contradictory police report, determined that the Murray report was not exculpatory. Id. Thus, the Magistrate Judge recommended that the second habeas claim be denied.

Notably, the reasons the Magistrate Judge provided for why the police report concerning Murray's statement was not Brady material were the same factors the state court used to determine that Chambers failed to demonstrate that the evidence was "favorable" or "material." Chambers, 807 A.2d at 887-88 (discussing the three Strickler requirements for a Brady claim). An independent review of the state court's analysis establishes that its decision was not contrary to or an unreasonable application of federal law. See 28 U.S.C. § 2254(d).

In his objections, Petitioner alleges that the Report relied on numerous factual errors in the PCRA court's opinion. (Doc. 56, pp. 11-13). First, Petitioner asserts that the PCRA court wrongly determined that Murray withdrew his statement prior to his arrest. On review, it appears that the PCRA court did misread the testimony.

At the end of his cross-examination, Timothy Thomas, certified legal intern for the Commonwealth stated: "And so - - I withdraw it." (Doc. 48, N.T. 9/30/99, p. 42). He then informed the court, "[t]hat's all the questions we have, Your Honor." Id. It is likely this withdrawn question that led to the PCRA court's finding. (Doc. 50, PCRA opinion, p. 8), citing (Doc. 48, N.T. 9/30/99, p. 42). Nevertheless, this fact was not relied upon by the Pennsylvania Supreme Court on appeal. Chambers, 807 A.2d at 887-88; see 28 U.S.C. § 2254(2) (permitting habeas relief only where the state court's decision was based on an unreasonable determination of the facts).

Petitioner also objects to the Report's determination that the crime described in Murray's statement was actually the robbery of Diane Myers. (Doc. 56, p. 12). An independent examination of Murray's PCRA testimony demonstrates that on September 5, 1986, he informed police that sometime after midnight on a Friday, Saturday, or Sunday two hispanic men arrived at the apartment where he was staying. (Doc. 48, N.T. 9/30/99, pp. 27-29). When asked if the men were there for drug related purposes, Murray answered, "Oh, yes. Yes." Id. at 28. Murray testified that this occurred the same weekend Ms. Morris was killed; however, he did not become aware of her murder until several months later when he watched "something to do with that murder ... on television." Id. at 21-22. Murray stated that the men were going through a woman's purse they had apparently stolen. Id. at 27-29. He

30

knew one of the males as "Magic" and heard "Magic" ask the other man, "why did you have to push her like that." Id. at 8-9. The male "responded that he didn't mean to - - he didn't mean to pull her, she wouldn't let go of the pocketbook." Id. at 9-10. According to Detective Follmer, Murray originally reported that only one male, "Magic", was involved. (Doc. 49, N.T. 10/15/99, p. 9). Police identified "Magic" as Ricardo Valentine, who had been stopped on February 6, 1986, driving a stolen vehicle. Chambers, 807 A.2d at 888. He was in possession of personal items belonging to Diane Myers, whose purse had recently been stolen. Id. Based on this evidence, the "police deduced that Murray's statement to Detective Follmer was in no way connected with the robbery and death of Morris and they made no further use of this information in their prosecution of [Petitioner]." Id.

Review of this evidence substantiates the Pennsylvania Supreme Court's holding that Murray's statement was not "material either to guilt or to punishment" and Petitioner was not prejudiced by counsel's failure to present the evidence at trial. Strickler v. Greene, 527 U.S. 263, 280-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (Evidence is "material" for purposes of Brady if "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); Kyles v. Whitley, 514 U.S. 419, 433, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); Chambers, 807 A.2d at 888. Especially in light of

Murray's credibility issues, the state court decision was not based on an unreasonable determination of the facts and, accordingly, the Magistrate Judge's conclusions are not erroneous. Despite Petitioner's arguments, it is improbable that Murray's statements described the instant murder. Anna Morris was bludgeoned to death with a weapon consistent with Petitioner's axe handle, but there are no allegations that "Magic" or the other hispanic male had a weapon. Further, "Magic's" alleged conversation, "why did you have to *push* her like that" and I "didn't mean to *pull* her..." is unlikely to have occurred between two men who just killed a woman by blunt force trauma to the head. (Doc. 48, pp. 8-9) (emphasis added). Rather, as the police,[5] the state courts, and the Magistrate Judge concluded, Murray's statement described the theft of Diane Myers' purse; thus, claim two will be denied.

### (C)   Claim III- Michael Boyard

The Report and Recommendation evaluated Petitioner's third claim, that trial counsel was ineffective for not adequately investigating whether Michael Boyard was involved in the crime, and concluded that he had not made the requisite

---

[5]Petitioner's contention that because the police investigated Murray's statement, it must have been exculpatory is also meritless. The police had a duty to check out a potential lead and it is only after they looked into the matter that they identified "Magic" and his connection with an unrelated robbery.

showing of ineffectiveness. (Doc. 54, pp. 34-37). The Report explained that the proffered evidence consisted of affidavits from Robin Wright and Aaron Heiner. Id. Wright attested that a few days after the murder, Boyard went to her house and asked what he should do with the stick he was carrying which he claimed he had used to beat somebody up. Id.; (Doc. 10, Ex. 18). Heiner's affidavit stated that on February 2, 1986, the day after the murder, he saw Michael Boyard carrying a stick and when he inquired why Boyard had it, Boyard replied, "[t]his is what I killed the old lady with." (Doc. 10, Ex. 17). Heiner claimed to have informed two detectives about this statement before the trial, but did not tell Petitioner's counsel because he "forgot." Id.[6]

The Magistrate Judge reviewed the state court holdings on this issue and reported that the trial court denied Petitioner's motion for a new trial based on this "after-discovered evidence." (Doc. 54, p. 35). On appeal, the Pennsylvania Supreme Court determined that the affidavit of Robin Wright "merely reveals that the same Michael Boyard asked the affiant where he could hide a stick he used to 'beat somebody up with' [and] does not identify the alleged victim, therefore, it is doubtful that this evidence would compel a different outcome." Chambers, 528 Pa.

---

[6]As will be discussed below, Aaron Heiner's allegation that he informed police about such an encounter is not credible.

33

at 583-84 (citing Commonwealth v. Scott, 503 Pa. 624, 470 A.2d 91, 93 (1983)

(stating that a "new trial is not warranted on the basis of after discovered evidence,

unless: 1) it could not have been discovered until after the trial despite reasonable

diligence; 2) it is not used for merely cumulative or impeachment purposes; and 3) it

is of such a nature that it would compel a different outcome")). The state court

further decided that the information from Aaron Heiner was discoverable prior to, or

during the trial, and would fail under Scott. Id. The Pennsylvania Supreme Court

held, "the trial court correctly denied [Petitioner's] motion for a new trial." Id.

The Magistrate Judge determined, "[t]here is *nothing* in petitioner's briefing

explaining who Robin Wright is, how she was connected to the Morris

investigation, or how any counsel ... could have identified Wright as a potential

witness prior to trial." (Doc. 543, p. 36) (emphasis in original). Thus, the Report

concluded that Petitioner failed to establish an ineffectiveness claim in this regard

and, consistent with the Pennsylvania Supreme Court's holding, there is nothing on

the face of the affidavit connecting the described facts to the charged murder. Id.

Magistrate Judge Mannion reasoned that Petitioner similarly failed to show

ineffectiveness as it related to Aaron Heiner because, although Heiner was a defense

witness, Petitioner did not "explain how counsel should have known or could have

known that Heiner was a 'witness' [to such a statement] in the first instance." Id. at

37. The Report indicated that Heiner's statement that he "forgot" about the incident supports this conclusion; consequently, the Magistrate Judge decided that Petitioner failed to establish an ineffectiveness claim as it relates to Michael Boyard.

Once again Petitioner's objections merely restate the arguments previously presented to, and considered by, the Magistrate Court. Nevertheless, his claim has been independently evaluated. Petitioner asserts that counsel's failure to ask Aaron Heiner whether he saw Michael Boyard on the day of the murder was deficient investigation. (Doc. 55, pp. 30-33). This argument ignores the complexity of the case and the fact that dozens of people, mostly teenagers drinking beer and smoking marijuana, were seen around the Black Bridge that day. See (Doc. 10, Exs. 5, 9-11) (police reports mention Petitioner, Troy, Rusty, Paul, Aaron, Vince, Roy, Adam, Tammy, Tina, Lisa, Dennis, Carl, Michael Boyard, and two other males not identified by name as being at or near the bridge on February 1, 1986). Counsel's failure to question Heiner about Boyard in particular is not *per se* ineffectiveness, especially in light of testimony that Heiner "forgot" about Boyard's statement.

Moreover, Aaron Heiner's affidavit is contradicted by the record. According to the police reports, the detectives asked him to provide a detailed description of his activities on the day of the murder, February 1, 1986, and he only once mentioned Michael Boyard. (Doc. 10, Ex. 10). Specifically, Heiner stated that

shortly after 2:00 pm, he, Vince Raineri, and Roy Philips were on their way to

Adam McKinney's house and "ran into 2 Caucasian juveniles - one Aaron [knew] as

MIKE OR MIX." Id. (police determined that "Mike or Mix" was Michael Boyard).

Without describing their encounter, Heiner then told the detectives that before going

on to Adam McKinney's, they went to a house on Hamilton Avenue, "stayed there

for about 15 minutes and left about 2:30."[7] Id. At no point did Aaron Heiner

mention that Michael Boyard had a stick or said anything about killing someone.

Id. In fact, at the time Heiner reportedly saw Boyard, Anna Morris was still alive.

Cf. (Doc. 40, pp. 62-63). More importantly, according to his affidavit, Aaron

Heiner "encountered Michael Boyard on Market Street in York" on "February 2,

1986"; but, this meeting could not have happened on that day because Heiner was

arrested on an unrelated robbery at 7:22 pm on February 1, 1986 and was still in the

York County Detention Home when the police interviewed him on February 3,

1986. (Doc. 10, Ex. 10). Aaron Heiner's affidavit is not credible.

    Further, Petitioner incorrectly contends that when the state court determined

that the evidence offered by Aaron Heiner and Robin Wright could have been

discovered pre-trial, counsel's ineffectiveness was demonstrated. (Doc. 55, p. 31).

---

    [7]Vince Raineri informed the detectives that when he, Aaron Heiner, and Roy
Philips met Michael Boyard on February 1, 1986, they asked where they could buy
marijuana and were told to go to the house on Hamilton Avenue. (Doc. 10, Ex. 9).

The Pennsylvania Supreme Court concluded that, not only did Petitioner fail to satisfy <u>Scott</u>'s first prong, he also failed to meet the third requirement for granting a new trial. <u>Chambers</u>, 599 A.2d at 583-84 (citing <u>Scott</u>, 470 A.2d at 93). Specifically, the Court decided that because Heiner "does not identify the alleged victim, ... it is doubtful that this evidence would compel a different outcome." <u>Id.</u>

The instant habeas petition challenged the state court's finding and submitted the affidavit of Janel Trivelpiece, which explained that Michael Boyard believed Aaron Heiner was referring to the murder of Anna Morris. (Doc. 10, Ex. 19). The Magistrate Judge determined, however, this factual assertion was never presented to the state courts and declined to consider the unexhausted claim. (Doc. 54, p. 35 n.15); <u>Gibson v. Scheidemantel</u>, 805 F.2d 135, 138 (3d Cir. 1986) (requiring a state prisoner to exhaust all state remedies before filing a federal habeas petition).

In his objections, Petitioner argues that the supplemental facts in Trivelpiece's affidavit do not alter his legal claim and are not precluded in federal review. (Doc. 56, p. 13). Upon consideration of the state court's reasoning, which was at least partially based on the lack of victim identification in the statements, it is determined that the Magistrate Judge's exhaustion decision is correct. Habeas claims must be "the substantial equivalent of that presented to the state courts" and "[m]ere reliance of state and federal claims on the same constitutional provision

does not render the two claims substantially equivalent." Gibson, 805 F.2d at 138;

Lark v. Beard, 2006 U.S. Dist. LEXIS 34121, *41-42 (E.D. Pa. 2006). In Kee, the

habeas court considered a claim of ineffective assistance relating to counsel's

failure to call three witnesses at trial. Kee v. Sec'y of D.O.C., 2008 U.S. Dist.

LEXIS 107035, *17-18 (E.D. Pa. 2008), adopted by 2008 U.S. Dist. LEXIS 105036

(E.D. Pa. 2008). The Court determined that the "petitioner relied upon statements

from these three witnesses during his state court proceedings[; h]owever, with

respect to two of these three proposed witnesses", he submitted additional affidavits

containing new factual information. Id. at *17-18 n.6 (the new statement of Mr.

Adams clarified that "petitioner ran into his home 'at [the] moment' [he] heard shots

fired" and, "Ms. Robinson expand[ed] on her original statement by including an

affirmative representation that petitioner Stanley Kee was not the person she saw

shooting on the day in question."). Kee held, "to the extent these affidavits contain

'new' information, these affidavits cannot be considered on habeas review." Id.

Regardless, Kee stated, "even if the new facts included in these new affidavits are

considered, this Court's recommendation remains unchanged ... because it does not

prove petitioner's actual innocence." Id. at *17 n.6, *29-30 n.9.

Here, the evidence supports the convictions and even after considering the

Trivelpiece affidavit, Petitioner failed to establish actual innocence or that the state

court's decision was contrary to law or based on an unreasonable factual determination. 28 U.S.C. § 2254(d). The Magistrate Judge's recommendation that the third claim for relief be denied will be adopted.

### (D)    Claim IV- Prosecutorial misconduct

Petitioner's fourth claim is that during the guilt-phase closing argument, the prosecution improperly vouched for a witness, introduced extra-record evidence, and misstated the law. (Doc. 54, p. 37). The Report determined that although Petitioner exhausted, for federal habeas purposes, his allegations of prosecutorial misconduct by raising them in the PCRA petition, he waived the claims from state collateral review by failing to argue them on direct appeal. (Doc. 54, p. 37) (citing Chambers, 807 A.2d at 87). The Report explained that the state court found waiver and also rejected this claim on the merits. Id. The Magistrate Judge then opined that there were "adequate and independent state law grounds" for waiver and did not conduct habeas review on the merits. Id. (citing Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)). The Report decided that to the extent Petitioner raised an ineffectiveness claim regarding waiver, the argument failed because he did not establish prejudice beyond the procedural default. Id. at 38 n.17 (citing Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996)).

Petitioner objects to the conclusion that the claims are procedurally barred.

He asserts that the state court, despite its notation that the claims were waived, decided the issue on the merits, thereby permitting federal review. (Doc. 56, p. 14).

"Where a state court refuses to consider a petitioner's claims because of a violation of state procedural rules, a federal habeas court is barred by the procedural default doctrine from considering the claims." Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004) (citing Harris, 489 U.S. 255). However, if the state court reaches the claim on the merits, there is no bar to federal-court review. Id. "[T]he Supreme Court established a 'plain statement' rule that there would be no procedural default, for purposes of federal habeas review, unless 'the last state court rendering judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar.'" Id., citing Harris, 489 U.S. 255 ("Requiring a state court to be explicit in its reliance on a procedural default does not interfere unduly with state judicial decision-making."). "Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding." Harris, 489 U.S. at 264 n.10. In Harris, the Supreme Court concluded,

> the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, [precedent] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.

Id. (internal citations omitted); see also Branch v. Tennis, 2009 U.S. Dist. LEXIS 33906 (E.D. Pa. 2009).

Here, the Pennsylvania Supreme Court stated[8] that Petitioner's claim was "waived"; however, the Court also determined that it had "reviewed the prosecutor's closing argument in the guilt phase[9] [and] it is clear that the contentions of Chambers in this regard are wholly without merit." Chambers, 807 A.2d at 887. The Court held, "[t]he Record reveals that the prosecution did not impermissibly vouch for witnesses, did not introduce 'extra-recorded evidence,' and did not incorrectly instruct the jury on the law." Id. Applying the "plain statement rule" to that decision, the Court "clearly and expressly" stated that its judgment rested on a state procedural bar and, in an alternative holding, denied Petitioner's claim on the merits. Accordingly, Petitioner's objection that the state court did not apply a waiver bar will be denied.

Petitioner argues, alternatively, that to the extent the state court did apply a

---

[8]The opinion cited is Petitioner's appeal of the PCRA court, but the Court's reference to its review during the "guilt phase" refers to the direct appeal.

[9] The Pennsylvania Supreme Court "has an independent obligation to review the record of the entire proceedings." Commonwealth v. Stoyko, 504 Pa. 455, 475 A.2d 714 (Pa. 1984), cert. denied 469 U.S. 963 (1984) (sustaining the conviction and sentence despite the fact that "neither trial counsel nor additional appointed counsel formally raised any issues regarding the penalty phase of the proceedings"); 42 Pa.C.S.A. § 9711(h).

waiver bar, it was not firmly established or regularly followed. (Doc. 56, pp. 14-15), citing <u>Szuchon v. Lehman</u>, 273 F.3d 299, 325 (3d Cir. 2001) ("A procedural rule is adequate only if it is firmly established, readily ascertainable, and regularly followed. <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24, 112 L. Ed. 2d 935, 111 S. Ct. 850 (1991)"). He asserts that in the same opinion, the state court reviewed his claim regarding "bad character testimony"[10] despite the fact that it was not raised at trial or presented on direct appeal. <u>Id.</u> (citing <u>Chambers</u>, 807 A.2d at 886-87). Petitioner contends that the waived claims were overcome by pleading ineffectiveness. <u>Id.</u>

An independent review of the Pennsylvania Supreme Court's discussion of the prior bad acts claim and the violent character testimony claim reveals that the Court determined both were waived. <u>Chambers</u>, 807 A.2d at 884-87. The state court then considered Petitioner's allegations in the context of an ineffectiveness argument for counsel's failure to preserve the issues for appeal. <u>Id.</u> In so doing, the Court addressed the merits of each, decided they were unfounded, and held that counsel would not be deemed ineffective for failing to pursue a meritless claim. <u>Id.</u>; see <u>Strickland</u>, 466 U.S. 668 (To establish that counsel was ineffective for not

_____

[10]Petitioner refers to the state court's decision regarding "bad character testimony", but the opinion discusses "claim 4- prior bad acts" and "claim 5- violent character testimony." Although the cited pages encompass all of the analysis of claim 5, they also include part of the discussion of claim 4; therefore, it is unclear to which section he refers. See <u>Chambers</u>, 807 A.2d at 884-87.

raising the matter on direct appeal, Petitioner was required to show: "(1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense."). Although the Court did not repeat the same language in its analysis of Petitioner's claim regarding the prosecution's closing argument, it decided that the allegation was "also waived because prior counsel did not raise it during trial or on direct appeal." Id. The state court then reviewed the merits of the claim and determined it to be "wholly without merit." Id. at 886-87. After reading the opinion in its entirety, it is evident that the state court's waiver bar was firmly established and regularly followed.

Moreover, when Magistrate Judge Mannion addressed Petitioner's ineffective assistance of counsel claim regarding waiver, he determined that it failed for the reasons previously discussed, specifically there was no evidence that trial counsel's strategy was unreasonable or that Petitioner was prejudiced as a result. See (Doc. 54, p. 38 n.17); see also Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir. 1992) (holding that the court may only address a procedurally defaulted claim if the petitioner shows "'cause' for the default and *prejudice* attributable thereto"), citing Wainwright v. Sykes, 433 U.S. 72, 87, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977). Independent examination confirms that the "conviction is fully supported by the adequate and independent state law grounds [of] waiver." (Doc. 54, p. 38). Thus,

the Report's determination that Petitioner's challenges to the prosecutor's closing arguments are procedurally defaulted is correct. Furthermore, Petitioner failed to establish that the state court's decision on the merits was contrary to law or based on an unreasonable factual determination. See 28 U.S.C. § 2254(d). Claim four will be denied.

### (E)    Claim V- Cumulative errors

The Report ended its analysis of the habeas petition concluding that because each of the allegations of individual error were rejected, there was no cumulative error to prejudice Petitioner's rights. (Doc. 54, p. 39). The Magistrate Judge stated, "application of that rule requires at least two such errors to cumulate." Id., citing Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) ("errors that individually do not warrant habeas relief may do so when combined").

In his objections, Petitioner argues that because the Report's determination was based on erroneous findings, as previously discussed, the Magistrate Judge's conclusion regarding cumulative error must also be incorrect. (Doc. 56, p. 15).

"[A] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Albrecht, 485 F.3d

44

at 139. A petitioner must establish two elements: "(1) at least two errors were committed in the course of the trial; [and] (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied [the petitioner] a fundamentally fair trial." <u>Reid v. Vaughn</u>, 109 Fed. Appx. 500 (3d Cir. 2004). Here, the only conceivable error was made by the PCRA court in wrongly determining that Wendell Murray withdrew his statement to police prior to Petitioner's arrest. As previously discussed, however, this finding was not relied upon by the Pennsylvania Supreme Court on appeal. No other errors were committed; thus, Petitioner's claim of cumulative prejudice fails and the Magistrate Judge's recommendation to deny claim five will be adopted.

## Conclusion

Based on the foregoing, the Report will be adopted and the recommendation to dismiss the habeas petition will be granted.

Date: *July 22, 2009*

_____
**United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KARL S. CHAMBERS,  :
    Petitioner,  :   3:06-CV-980
                  :
   v.  :
                  :   (JUDGE NEALON)
BEARD et. al.,  :   (MAGISTRATE JUDGE MANNION)
    Respondents  :

## ORDER

NOW, THIS 22 DAY OF JULY, **2009**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The Report and Recommendation (Doc. 54) is **ADOPTED**.

2. The amended petition for writ of habeas corpus (Doc. 10) is **DENIED**.

3. The Clerk of Courts is directed to **CLOSE** this case.

4. There is no basis for the issuance of a certificate of appealability.

_____
**United States District Judge**